UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE CULP, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 252 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| EMMANUEL FLORES #5337, ALLEN BROWN | ) | |
| #165, FRANK SCANIO #5699, DAVID SANDACK | ) | |
| #5316, MELISSA ALBERT #6118, WILLIAM | ) | |
| DOSTER, RANCE ROBINSON, RUBEN FLORES, | ) | |
| DAN ROBINSON, NANCY REEVES, and | ) | |
| CHRISTOPHER PETERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Lawrence Culp brings claims under 42 U.S.C. § 1983 and Illinois law against several

Illinois Gaming Board agents and police officers arising from his arrest, detention, and felony

prosecution for allegedly cheating at a poker-keno game at Harrah's Casino in Joliet. Doc. 57.

Defendants move under Civil Rule 12(c) for judgment on the pleadings. Doc. 127. The motion

is denied.

## Background

As on a Rule 12(b)(6) motion, the court on a Rule 12(c) motion assumes the truth of the

complaint's well-pleaded factual allegations, though not its legal conclusions. *See Bishop v. Air*

*Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred

to in it, and information that is subject to proper judicial notice," along with additional facts set

forth in Culp's opposition papers, so long as those additional facts "are consistent with the

pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013)

(internal quotation marks omitted); *see also N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The facts are set forth as favorably to Culp as those materials allow. *See Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

On April 24, 2013, Culp played a video poker-keno machine at Harrah's Casino and won money. Doc. 57 at ¶¶ 12, 22. He did not manipulate or have inside information regarding the machine. *Id*. at ¶¶ 18-21. As a result of the way WMS Gaming manufactured or programmed it, the machine had favorable pay tables, which affected not whether a player won or lost, but the amount a player won upon winning. *Id*. at ¶¶ 13-17.

Upon discovering that Culp won money at the machine, Defendants together decided to arrest and criminally charge him even though he did not violate, and even though there was no probable cause to believe that he had violated, any law. *Id*. at ¶¶ 22-28. Culp was arrested and jailed on April 27, 2013, and was charged by information two days later for the crime of cheating in a gambling game. *Id*. at ¶ 39; Doc. 128 at 3, 6; Doc. 128-1. He posted bond and was released from jail on April 30, 2013. Doc. 57 at ¶ 63; Doc. 128-2 at 10-11; Doc. 131.

WMS Gaming investigated the favorable pay tables on the video poker-keno machines and issued a report in late July 2013—some three months after Culp's arrest—finding that they were the result of inadvertent coding errors. Doc. 57 at ¶¶ 29-31. The report added that there was no evidence that WMS Gaming software engineers had contact with any video poker-keno players, including Culp. *Id*. at ¶ 32. Defendants received the report and therefore had no reason to believe that Culp had violated any law. *Id*. at ¶¶ 33-34. Despite this, Defendants continued the criminal process against Culp, with their efforts resulting in his being charged by grand jury

in February 2014 with several felonies, including cheating in a gambling game, burglary, money laundering, and computer tampering. *Id*. at ¶¶ 37, 39-41; Doc. 128-2 at 7-8. Defendants did not have probable cause to commence or continue the criminal proceedings and acted with malice, basing Culp's arrest, detention, and prosecution on their false allegations, testimony, and fabricated police reports. Doc. 57 at ¶¶ 46-48, 61-62, 66-67.

On January 12, 2016, after Culp demanded trial, the prosecution moved to *nolle prosequi* and the charges were dismissed. *Id*. at ¶ 42. Culp filed this suit on January 12, 2017. Doc. 1. That day, Culp also brought state law claims for malicious prosecution and civil conspiracy against Defendants in the Illinois Court of Claims. Doc. 128-5. The Court of Claims continued the matter generally in light of this federal suit. Doc. 128-6.

## Discussion

The operative complaint brings claims under the Fourth Amendment, the Fourteenth Amendment, and Illinois law. Doc. 57.

## I. Federal Claims

### A. Fourth Amendment Claim

The Fourth Amendment claim alleges that Defendants "lacked probable cause to criminally charge and prosecute" Culp and that they "based the arrest, detention and/or prosecution of [him] on their false allegations, testimony and fabricated police reports." Doc. 57 at ¶¶ 61-62. The statute of limitations for this claim is two years. *See Savory v. Cannon*, 947 F.3d 409, 413 (7th Cir. 2020) (en banc) ("In Illinois, the applicable limitations period [for § 1983 claims] is two years."). Citing *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018), and *Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019), for the proposition that a Fourth Amendment pretrial detention claim accrues when the seizure ends, Defendants contend that Culp's claim is time-barred because he was released from jail on April 30, 2013, well over two

years before he filed suit. Doc. 128 at 5-9. Citing the Supreme Court's subsequent decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), Culp argues under the *Heck* doctrine that his Fourth Amendment claim did not accrue until January 12, 2016, when the criminal case was dismissed. Doc. 148 at 1. In the alternative, he argues that because his bond conditions were severe enough under the standard articulated in *Mitchell* to effectuate a continued seizure, his claim did not accrue until those restrictions were lifted upon the dismissal of his criminal case. *Id*. at 2-3; Doc. 137 at 2-3.

The law governing the accrual date for § 1983 claims like Culp's has been fluid, and both sides present reasonable and cogent arguments. Culp's position prevails based on the understanding of *McDonough* and *Heck* expressed by the en banc Seventh Circuit in *Savory*. Two aspects of the Seventh Circuit's analysis are pertinent here. First, *Savory* observes that *McDonough* establishes that the *Heck* doctrine applies to § 1983 claims brought not only by plaintiffs who have standing convictions, but also by plaintiffs who have not been convicted and are subject to ongoing criminal proceedings. *See Savory*, 947 F.3d at 417 (citing *McDonough*, 139 S. Ct. at 2158). Second, *Savory* explains that when a plaintiff subject to ongoing criminal proceedings brings a § 1983 claim that, if successful, would be incompatible with a conviction on those charges, *McDonough* establishes that, under *Heck*, the claim does not accrue "until the criminal proceeding end[s] in the [plaintiff's] favor." *Id*. at 418; *see also id*. at 428 ("The Court [in *Heck*] sought to avoid parallel litigation on the issue of guilt, preclude the possibility of conflicting resolutions arising out of the same transaction, … and respect concerns for comity … and consistency.").

Culp's Fourth Amendment claim is premised on the complaint's allegations that he committed no crime, Doc. 57 at ¶¶ 25-28, that Defendants "did not have any reason to believe

that [he] had violated … any city, state or federal law," *id*. at ¶ 34, and that Defendants "based

the[ir] arrest, detention and/or criminal prosecution of [him] on their false allegations, testimony

and fabricated police reports," *id*. at ¶ 62. Because success on that claim would be incompatible

with a conviction on the charges for which Culp was arrested, detained, and prosecuted, "[t]here

is no logical way to reconcile th[e] claim[] with a valid conviction." *Savory*, 947 F.3d at 417. It

follows under *Savory*'s understanding of *McDonough* and *Heck* that Culp's Fourth Amendment

unlawful detention claim—even if that claim were limited to the time he spent in jail, and did not

extend through the time he was on bond—did not accrue until the charges against him were

dismissed on January 12, 2016. This, in turn, renders that claim—brought one year later—timely

under the two-year statute of limitations.

     This result finds strong support in *Sanders v. St. Joseph Cnty.*, __ F. App'x __, 2020 WL

1531354 (7th Cir. Mar. 31, 2020). The plaintiff in *Sanders* brought an unlawful detention claim,

presumably under the Fourth Amendment, alleging that he was wrongfully jailed for several

months. *Id*. at \*2. The district court dismissed the claim on statute of limitations grounds, and

the Seventh Circuit reversed. *Ibid*. Citing *Manuel*, the Seventh Circuit held that the plaintiff

"could not have used § 1983 to contest his custody while it was ongoing," and therefore that his

"claim of unlawful detention accrued, at the earliest, when he was released from jail." *Ibid*.

Standing alone, that passage in *Sanders* supports Defendants' position that Culp's Fourth

Amendment wrongful detention claim accrued upon his release from jail. In a footnote,

however, the Seventh Circuit added this qualification:

> If, however, a conclusion that [the plaintiff's] confinement was
> unconstitutional would imply the invalidity of an ongoing criminal proceeding
> … , then *Heck* would continue to bar [his] claim after his release and until
> either those proceedings terminated in his favor or the conviction was vacated.
> *See McDonough v. Smith*, 139 S. Ct. 2149 (2019); *Savory v. Cannon*, 947
> F.3d 409, 414 (7th Cir. 2020).

*Id.* at \*2 n.2. This analysis directly answers the accrual issue here: Because, given the nature of his Fourth Amendment claim, a finding that Culp's detention in jail was unconstitutional would imply the invalidity of the charges brought against him, *Heck* barred that claim until those charges were dismissed. And because Culp's wrongful detention claim is timely even if it is limited to the time he spent in jail, it is unnecessary at this juncture to decide whether, under *Mitchell*, his seizure continued for Fourth Amendment purposes while he was on bond.

### B. Fourteenth Amendment Claim

The Fourteenth Amendment claim alleges that Defendants "lacked probable cause to criminally charge and/or prosecute" Culp and that they "based the arrest, detention and/or prosecution of [him] on their false allegations, testimony and fabricated police reports." Doc. 57 at ¶¶ 66-67. In seeking dismissal, and correctly observing that this claim is essentially identical to Culp's Fourth Amendment claim, Defendants cite *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019), for the proposition that "all § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." Doc. 128 at 9; *see also* Doc. 149 at 2-3. Culp concedes that his Fourteenth Amendment claim is incompatible with *Lewis*, but argues that *McDonough* undermines *Lewis* and thereby gives new life to the claim. Doc. 148 at 4.

As with the Fourth Amendment claim, the parties' arguments regarding the Fourteenth Amendment claim are reasonable and cogent, but unlike the question of when the Fourth Amendment claim accrued, Seventh Circuit case law does not conclusively answer whether Culp has a viable Fourteenth Amendment claim. Resolving that very difficult question would have no impact on this case at this juncture because, regardless of its answer, the case will remain in federal court (as the Fourth Amendment claim survives), and because discovery on the Fourth and Fourteenth Amendment claims will be coextensive (as both rest on the same factual

predicate). Accordingly, the court declines to dismiss the Fourteenth Amendment claim on the pleadings, knowing that it will have an opportunity to address the claim when Defendants renew their challenge at summary judgment.

## II.    State Law Claims

Culp brings state law claims against Defendants for malicious prosecution and civil conspiracy. Doc. 57 at ¶¶ 45-49, 55-56.

### A.    State Sovereign Immunity

The Illinois State Lawsuit Immunity Act provides that, absent certain exceptions, "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1. Defendants argue that Culp's state law claims against them are in fact claims against the State for purposes of the Act because they were acting pursuant to their duties as Gaming Board officers. Doc. 128 at 10-15. Culp responds that the Act does not bar his state law claims because he alleges that Defendants acted "in violation of statutory or constitutional law" and because the duties they breached in engaging in malicious prosecution and civil conspiracy are duties shared by the public generally rather than those imposed by virtue of their employment. Doc. 137 at 4-5.

Under the Act, a claim against a state official is treated as a claim against the State only "when there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016) (internal quotation marks omitted), *aff'd*, 138 S. Ct. 784 (2018) (addressing unrelated issues). When all three elements are present, "it is as if the action is brought against the state directly and sovereign immunity applies." *Hampton v. City of Chicago*, 349 F. Supp. 2d 1075, 1078 (N.D. Ill. 2004).

7

But when a state official violates a constitutional or statutory command, or acts in excess of his or her authority, state sovereign immunity affords the official no protection. *See Murphy*, 844 F.3d at 659; *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *Leetaru v. Bd. of Trs. of Univ. of Ill.*, 32 N.E.3d 583, 595 (Ill. 2015). That is because "when a state officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, the officer's conduct is not regarded as the conduct of the State. A suit may therefore be maintained against the officer without running afoul of sovereign immunity principles." *Leetaru*, 32 N.E.3d at 596 (citation omitted).

The foregoing principles defeat Defendants' invocation of the Act. The complaint alleges that Defendants violated Culp's federal constitutional rights by arresting and detaining him and by causing and continuing his prosecution, and the factual allegations underlying those federal claims also ground his state law claims. Because Defendants are alleged to have "acted in violation of statutory or constitutional law," *Murphy*, 844 F.3d at 659 (internal quotation marks omitted), Culp's state law claims are not "against the State," and therefore the Act does not apply. *See Bentz v. Ghosh*, 718 F. App'x 413, 419-20 (7th Cir. 2017) (reversing the dismissal of state law negligence claims brought against defendants subject to a viable Eighth Amendment claim, reasoning that, "[i]n dismissing the negligence claims … , the district judge relied only on the Illinois doctrine of sovereign immunity, but that doctrine will not apply to state-law claims against state officials who allegedly violate statutory or constitutional law"); *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 886 (N.D. Ill. 2019) ("Here, Plaintiff has adequately alleged that Defendants conspired to, and then violated his constitutional rights. Those same actions also violated the [Illinois Whistleblower Act]. Plaintiff has therefore alleged that Defendants acted outside their official authority and thus sovereign immunity [is

8

inapplicable].”); *Ellis v. Pfister*, 2017 WL 1436967, at *5 (N.D. Ill. Apr. 24, 2017) (denying

Illinois state sovereign immunity on intentional infliction of emotional distress, battery, and

negligent or willful and wanton conduct claims because the plaintiff plausibly alleged that the

defendants committed constitutional violations).

### B. *Colorado River* Abstention

In the alternative, Defendants contend that this court should abstain under the *Colorado*

*River* doctrine from hearing Culp's state law claims due to the case he filed in the Illinois Court

of Claims. Doc. 128 at 15-16. The *Colorado River* doctrine provides that "a federal court may

stay or dismiss a suit in federal court when a concurrent state court case is underway, but only

under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed*

*v. JPMorgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colo. River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)); *see also Caminiti & Iatarola,*

*Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). The Supreme Court "has

cautioned that abstention is appropriate only in 'exceptional circumstances,' and has also

emphasized that federal courts have a 'virtually unflagging obligation … to exercise the

jurisdiction given them.'" *AXA Corp. Sols. v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th

Cir. 2003) (alteration in original) (quoting *Colo. River*, 424 U.S. at 813, 817). In determining

whether to abstain, the court's task is "not to find some substantial reason for the exercise of

federal jurisdiction by the district court; rather, the task is to ascertain whether there exist

exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to

justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 25-26 (1983) (emphases and internal quotation marks omitted).

The *Colorado River* analysis has two steps. First, the court determines "whether the state

and federal court actions are parallel." *Freed*, 756 F.3d at 1018. "[F]or *Colorado River* purposes

… [p]recisely formal symmetry" between the state and federal suits "is unnecessary" to find parallelism. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011). Rather, suits are parallel where "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Freed*, 756 F.3d at 1019 (internal quotation marks omitted). Thus, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted); *see also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (same). "Any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *Adkins*, 644 F.3d at 499 (alteration in original, internal quotation marks omitted).

If the proceedings are not parallel, *Colorado River* abstention must be denied without further inquiry. *See Freed*, 756 F.3d at 1018. If the proceedings are parallel, the court must examine and balance these ten non-exclusive factors to determine whether abstention is proper:

(1) whether the state has assumed jurisdiction over property;

(2) the inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) the source of governing law, state or federal;

(6) the adequacy of state[ ]court action to protect the federal plaintiff's rights;

(7) the relative progress of state and federal proceedings;

(8) the presence or absence of concurrent jurisdiction;

(9) the availability of removal; and

(10) the vexatious or contrived nature of the federal claim[s].

*Ibid*. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colo. River*, 424 U.S. at 818-19.

In seeking *Colorado River* abstention, Defendants devote just one paragraph in their initial brief and one paragraph in their reply brief, Doc. 128 at 15-16; Doc. 141 at 7, neither of which mention (let alone apply) the standard for evaluating parallelism or the ten factors that must be applied once parallelism is found. Nor do Defendants address the significance for *Colorado River* purposes of the Court of Claims's stay of its proceedings in light of this federal case, or even whether *Colorado River* abstention can be premised on an assertedly parallel case in the Court of Claims. Defendants accordingly fail to satisfy their burden of demonstrating that *Colorado River* abstention is appropriate. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … .").

## Conclusion

Defendants' motion for judgment on the pleadings is denied.

April 15, 2020

_____

United States District Judge

11